UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | |
| | * | Criminal No. 1:19-cr-10279-IT |
| JESUS CASTILLO, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER
May 6, 2021

TALWANI, D.J.

Defendant Jesus Castillo was indicted on one count of conspiracy to distribute and to possess with the intent to distribute oxycodone in violation of 21 U.S.C. § 846. Indictment 1-2 [#1]. Now before the court is Defendant's Motion to Dismiss [#146] the indictment pursuant to Federal Rules of Criminal Procedure Rule 12(b) based on his removal from the United States. For the reasons that follow, the Motion [#146] is ALLOWED and the Indictment [#1] is DISMISSED WITHOUT PREJUDICE as to Castillo.

I.  Factual and Procedural Background

This drug conspiracy case arose from the Drug Enforcement Agency's ("DEA") investigation into Michael Spinola and his associates who were suspected of trafficking large quantities of controlled substances in Massachusetts. Gov't Opposition to Mot. Dismiss ("Opp'n") 1 [#151]; Lima Affidavit in Support of Wiretap Application ¶¶ 8-9, 17-39 [#141-1]. The DEA received authorization for a wiretap of Spinola's cell phone on July 14, 2017, see Order Authorizing the Interception of Wire Communications USAO-000450-459 [#141-1], and in 2018, received four subsequent wiretap authorizations for two phones connected with Spinola. See Second Order Authorizing Interception of Wire Communications USAO-000557-569 [#141-2]; Third Order Authorizing Interception of Wire Communications USAO-000656-667 [#141-3]; Fourth Order Authorizing Interception of Wire Communications USAO-000752-763 [#141-4]; Fifth Order

Authorizing Interception of Wire Communications USAO-000851-860 [#141-5]. The government states that its wiretap surveillance showed Curly Kelly "obtained oxycodone in Texas, supplied it to Spinola, and that on June 23, 2018, Spinola distributed [the oxycodone] to Castillo." Opp'n 1 [#151]. Shortly thereafter, Castillo was stopped and arrested by the Massachusetts State Police on state drug charges. Id.; see also Mot. to Dismiss ("Mot.") 1-2 [#146].[1]

After Defendant posted bail in the state drug case, he was taken into U.S. Immigration and Customs Enforcement ("ICE") custody. Mot. 2 [#146]; Opp'n 2 [#151]. ICE then referred Defendant to the U.S. Attorney's Office for criminal prosecution of the immigration offense, and on August 2, 2018, Defendant was indicted for unlawfully reentering the United States after being removed, in violation of 8 U.S.C. § 1326. Mot. 2 [#146]; see United States v. Castillo-Martinez, 18-CR-10247-NMG, [#1]. Defendant agreed to voluntary detention but moved to dismiss the Indictment on the ground that the underlying removal order was unlawful, see Motion to Dismiss [#33], 18-CR-10247-NMG; after the motion was denied, Defendant conditionally pleaded guilty to the unlawful re-entry indictment. Mot. 2 [#146]; see Notice of Reservation of Appellate Rights [#53], 18-CR-10247-NMG. Prior to sentencing, ICE lodged a detainer. Mot. 2 [#146] (citing p. 2 of PSR from the unlawful reentry case).

On September 10, 2019, Defendant was sentenced to time served in the re-entry case. Id.; see also Order and Judgment [#63], 18-CR-10247-NMG. Defendant's appeal of that conviction is pending. See United States v. Castillo-Martinez, No. 19-1971 (1st. Cir. filed Sept. 30, 2019).

---

[1] The government explains that "investigators conducted a 'walled-off' stop" to avoid disclosure of the ongoing investigation. Opp'n 1 [#151].

Meanwhile, on August 7, 2019, Defendant was indicted in this drug conspiracy case.[2] Mot. 2 [#146]. He was arraigned on the morning of September 10, 2019, id.; Elec. Clerk's Notes [#29], and initially detained on the government's motion. Order of Temporary Detention [#31]. Following a contested detention hearing, the Magistrate Judge noted that "Castillo has no legal status in the United States" and that "[t]he Probation Office reports that there is a final order of removal," but concluded, after considering the factors set forth in 18 U.S.C. § 3142, that the government had not met its burden regarding detention and that "[a]ny [flight] risk associated with [Castillo's] lack of legal status in the United States may also be mitigated with appropriate conditions of release." Order on Government's Motion for Detention 3-4 [#53]. On November 4, 2019, after a further hearing concerning conditions of release, the Magistrate Judge issued an Order Setting Conditions of Release [#56], including a condition that Defendant not leave the District of Massachusetts. The government did not appeal. Mot. 2 [#146].

Defendant was not released on November 4, 2019, and was instead moved into ICE administrative custody pursuant to the ICE detainer. Mot. 2 [#146]; Opp'n 2 [#151]. ICE then initiated removal proceedings, and Defendant sought withholding of his removal under the Convention Against Torture. See Order of the Immigration Judge [#146-1]. An administrative judge held a hearing on March 16, 2020, and on August 12, 2020, issued a written order denying withholding of removal. Id. On October 20, 2020, Defendant was removed from the United States. Mot. 3 [#146]; Opp'n 2 [#151].

---

[2] The Indictment [#1] alleges Defendant conspired with co-defendants Spinola and Kelly to "knowingly and intentionally distribute and possess with intent to distribute oxycodone" in Boston, Cambridge, Medford, and Somerville, in the District of Massachusetts.

Defendant's counsel informed the court during a November 6, 2020 pretrial conference that Castillo had been removed from the United States, Elec. Clerk's Notes [#124], and on January 28, 2021, filed the Motion to Dismiss [#146].

## II. Legal Standard

Federal Rules of Criminal Procedure Rule 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." "Pure questions of law are properly considered on a pretrial motion to dismiss." United States v. Gomez-Ramirez, 365 F. Supp. 3d 226, 230 (D. Mass. 2019) (citing United States v. Pope, 613 F.3d 1255, 1260 (10th Cir. 2010)). However, motions to dismiss indictments which rely on disputed facts, see United States v. Covington, 395 U.S. 57, 60 (1969), or motions challenging the sufficiency of the evidence underlying an indictment, see United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2011), should be denied.

## III. Discussion

Defendant's Motion [#146] argues that his removal from the United States merits dismissal for four reasons: (1) the government abandoned its drug prosecution; (2) the government violated federal immigration regulations; (3) the government violated Defendant's rights under the Bail Reform Act ("BRA"), 18 U.S.C. § 3141, et seq.; and (4) the government violated his Fifth Amendment Due Process right to prepare a defense and Sixth Amendment right to the assistance of counsel. Defendant further argues that the "totality of the circumstances . . . calls for a dismissal with prejudice." Mot. 15 [#146].

The government disputes all four grounds and argues that if the indictment is dismissed, it should be without prejudice.

In considering the parties' arguments, the court notes that the question at issue in many of the cases on which the parties rely – whether ICE may take custody of a criminal defendant pending

4

trial – is a question this court does not need to reach; the question posed here, in contrast, is what, if anything, should be done where ICE removes a defendant after arraignment and before trial.

    A. <u>Violation of Federal Immigration Regulations</u>

Defendant asserts that by removing him, the government violated two regulations under the Immigration and Nationality Act ("INA"), 8 U.S.C. 1101, et seq. Mot. 9-10 [#146]. The first regulation, 8 C.F.R. § 215.2, states that "[n]o alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States under the provisions of § 215.3." Section 215.3, in turn, describes those categories of noncitizens "whose departure shall be deemed prejudicial to the interests of the United States," to include:

> [a]ny alien who is needed in the United States as a witness in, or as a party to, any criminal case under investigation or pending in a court in the United States. <u>Provided,</u> [t]hat any alien who is a witness in, or a party to, any criminal case pending in any criminal court proceeding may be permitted to depart from the United States with the consent of the appropriate prosecuting authority, unless such alien is otherwise prohibited from departing under the provisions of this part.

8 C.F.R. § 215.3(g) (emphasis in original).

The government contends that these regulations apply only to voluntary departures and not to Defendant's removal. Opp'n 13 [#151] (citing <u>United States v. Lett</u>, 944 F.3d 467, 473-74 (2d Cir. 2019); <u>United States v. Marinez-Patino</u>, No. 11-CR-064, 2011 WL 902466, at *6 (N.D. Ill. Mar. 14, 2011) ("[T]he legislative authority for Section 215 is contained in 8 U.S.C. § 1185(a). This statute . . . provides for regulations governing an alien's ability to 'depart from' or 'enter' the United States, not the government's ability to 'remove' an alien (a topic which is separately addressed in 8 U.S.C. § 1231.)." (internal citation omitted)).

In <u>Lett</u>, the defendant, who sought release from ICE custody, argued that these regulations barred ICE from deporting criminal defendants during the pendency of their criminal cases, and therefore barred ICE from detaining such defendants. 944 F.3d at 472. The Second Circuit rejected his argument for release, concluding that "these regulations merely prohibit aliens who are parties to

a criminal case from departing the United States voluntarily . . . ." Id. at 472-73 (citing United States v. Ailon-Ailon, 875 F.3d 1334, 1339 (10th Cir. 2017) (referring to 8 C.F.R. § 215.2(a) as governing "voluntary departure") (emphasis in original)); see also United States v. Baltazar-Sebastian, 990 F. 3d 939, 946 (5th Cir. 2021) ("[E]very circuit to consider the issue agrees the regulations concern an alien's own actions, not those of ICE.") (citations omitted).

The court agrees that these regulations concern a noncitizen's voluntary departure, and not ICE's removal of that individual, and that ICE therefore did not violate these regulations.

B. Violation of Defendant's Rights under the Bail Reform Act

Defendant contends that the government violated his rights under the Bail Reform Act by removing him and making it "impossible for Mr. Castillo to appear for future court proceedings." Mot. 12 [#146].  He argues that the government "made the decision to proceed with Mr. Castillo's criminal case despite the existence of an ICE detainer . . . [and therefore] was not permitted to use its power of removal to trump defendant's statutory right to release under the BRA." Id.

The Bail Reform Act and related statutes dictate that once an individual is arrested for a federal offense, a judicial officer must make the determination as to whether such person should be imprisoned or released pending their criminal trial. For any offense against the United States, a judicial officer may order an offender "arrested and imprisoned or released as provided in chapter 207 of [Title 18, Release and Detention Pending Judicial Proceedings] . . . for trial before such court of the United States as by law has cognizance of the offense." 18 U.S.C. § 3041; see also id. § 3141 ("[a] judicial officer authorized to order the arrest of a person . . . before whom the arrested person is brought shall order that person be released or detained, pending judicial proceedings, under this chapter [207 – Release and Detention Pending Judicial Proceedings]"). In other words, included in the authority to order the arrest of an individual and bring him before the court is the authority to determine whether that individual should be detained or released pending trial.

The BRA also requires that once an individual is arrested for a federal crime, the judicial officer (and not an arresting officer or other jurisdiction) determines whether the individual poses a risk of flight or danger to the community. This conclusion follows from the structure of the BRA, which allows for temporary detention to allow the appropriate court, state or local law enforcement official, or appropriate ICE official, "to take such person into custody," but only on a judicial officer's determination that (1) the person was on release pending trial for a felony, on release pending imposition of a sentence, on probation or parole, or, is not a citizen of the United States or lawfully admitted for permanent residence, and (2) the person may flee or pose a danger to any other person or the community. Id. at § 3142(d).

Here, the Magistrate Judge found that Defendant was not likely to flee and did not pose a danger to any other person or community. To the extent that ICE nonetheless took custody because it "was unwilling or unable to release Castillo, with the attendant risk that he would flee or commit additional crimes," Opp'n 6 [#151], ICE's actions appear to be directly contrary to the BRA, which placed the determination of flight and danger in the hands of a judicial officer, not an ICE official. See Trujillo-Alvarez, 900 F. Supp. 2d 1167, 1178 (D. Or. 2012) (finding ICE detention of defendant "for the purpose of delivering him to trial" violated both the BRA and the magistrate judge's release order). If the government disagreed with the Magistrate Judge's evaluation of flight risk and danger to the community, the proper step would have been for the government to appeal that decision. See 18 U.S.C. § 3145. No such appeal was taken.

The government responds that there is no "irreconcilable conflict between the BRA and the INA" and that parallel proceedings are possible. Opp'n 14-15 [#151] (citing United States v. Rincon-Meza, No. CR-19-0062-JCC, 2019 WL 2208734, at *3 (W.D. Wash. May 22, 2019) ("The detention of a criminal defendant pending trial and the detention of an alien pending removal proceedings are separate functions, administered by separate authorities, and serve different

7

purposes. Thus, it is not apparent that the BRA and INA conflict such that one nullifies the effect of the other.")). But even if ICE took Defendant into custody to facilitate the removal process rather than because it disagreed with the Magistrate Judge's order, and even if the two statutory schemes co-existed from the time Defendant was moved to ICE custody in November 2019 until the immigration judge issued a written order denying withholding of removal in August 2020, the conflict came to a head when ICE removed the Defendant.

The BRA certainly contemplates that another jurisdiction or ICE may detain a federal defendant pretrial (albeit, as discussed above, limited to the circumstance where the judicial officer determines that the person is a flight risk or danger to the community). If the federal defendant is on release pending imposition of a sentence, on probation or parole, or, is not a citizen of the United States or lawfully admitted for permanent residence, and the judicial officer determines that the person is a flight risk or danger to the community, the judicial officer must order temporary detention for not more than ten days, direct the government to notify "the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service," [3] and then give those officials ten days to take custody of the person. 18 U.S.C. § 3142(d). In that event, ICE (or the other jurisdiction) may take that defendant into their custody. Nothing in the BRA suggests that ICE (or these other jurisdictions) who obtain custody may choose not to return the defendant as needed for the federal proceedings.

A number of courts have concluded that while the BRA "aims to ensure a defendant's presence at trial, the INA uses detention to ensure an alien's presence at removal proceedings." United States v. Soriano-Nunez, 928 F.3d 240, 245 (3rd Cir. 2019) (citing United States v.

---

[3] The Immigration and Naturalization Service was abolished pursuant to the Homeland Security Act of 2002. See United States v. Watson, 386 F.3d 304, 306 n.1 (1st Cir. 2004). Immigration functions were transferred to the agencies within the newly-created Department of Homeland Security and to the Department of Justice. Id.

Vasquez-Benitez, 919 F.3d 546, 552-54 (D.C. Cir. 2019)). Indeed, as the Soriano-Nunez court noted, no court of appeals has determined that "pretrial release precludes pre-removal detention." Id. (citing Vasquez-Benitez, 919 F.3d at 553 ("Congress has never indicated that the BRA is intended to displace the INA."); United States v. Veloz-Alonso, 910 F.3d 266, 269 (6th Cir. 2018) ("[N]othing in the BRA prevents other government agencies or state or local law enforcement from acting pursuant to their lawful duties.")). But in these cases, the issue was the alleged interference with a defendant's release from custody, not an interference with trial by the defendant's removal from the United States. See Soriano-Nunez, 928 F.3d at 245 (court of appeals did not have jurisdiction over denial of motion to dismiss indictment; review limited to appeal of order denying claim that BRA release order forecloses ICE detention); Vasquez-Benitez, 919 F.3d at 553 (district court erred in finding that "the BRA provides the exclusive means of detaining a defendant criminally charged with reentry"). In other cases, the record makes clear that ICE custody did not directly interfere with the criminal prosecution. In Baltazar-Sebastian, for example, the Fifth Circuit concluded that the District Court's enforcement of a magistrate judge's order releasing the defendant did not prevent ICE from detaining the noncitizen to facilitate defendant's removal, and vacated district court's order precluding ICE from detaining defendant pending completion of her criminal proceedings. 990 F.3d at 945. Notably, however, ICE had responded to a writ of habeas corpus ad prosequendrum and produced the defendant so that she could appear at a pretrial hearing. Id. at 942.

Here, in contrast, the court need not determine whether the government's detention of Defendant for the purpose of completing the steps necessary to remove him was proper. The court finds that ICE's removal of the Defendant directly interfered with the Magistrate Judge's order designed to ensure his presence at his criminal proceedings and with this court's jurisdiction over the criminal case.

9

C.  <u>Violation of Defendant's Fifth and Sixth Amendment Rights</u>

Defendant also argues the government violated his Fifth Amendment right to due process and Sixth Amendment right to assistance of counsel by pursuing his prosecution after removing him from the country. Mot. 12 [#146]. Defendant contends that his removal to the Dominican Republic makes him unavailable for trial, interferes with his ability to prepare a defense to the charges, consult with counsel, review evidence against him, and confront adverse witnesses. <u>Id.</u> at 12-13. Defense counsel further represents that it has been difficult to keep in contact with Defendant since he was removed as he has had limited access to a cell phone in the Dominican Republic. <u>Id.</u> at 14.

The Fifth Amendment provides that "no person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Fifth Amendment right to

> [d]ue process guarantees that a criminal defendant will be treated with that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.

<u>United States v. Valenzuela-Bernal</u>, 458 U.S. 858, 872 (1982) (internal citation and quotation omitted). The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI.

The court finds that Defendant's absence from the District of Massachusetts, where he faces charges and where he allegedly committed the charged offense, interferes with his ability to consult with counsel and prepare a defense, in violation of the Sixth Amendment, and that Defendant's inability to do so is solely attributable to the government. See <u>United States v. Ferreira-Chavez</u>, No. 1:20-cr-00145-BLW, 2021 WL 602822, at *3 (D. Idaho Feb. 12, 2021) ("[t]he decision to deport [Defendant], while criminal charges were pending, was the Government's alone"). The government violated (and is violating) Defendant's Sixth Amendment rights. <u>See, e.g.</u>, <u>United States v. Lutz</u>, No. CR-19-00692-TUC-RM (BGM), 2019 WL 5892827, *5 (D. Ariz. Nov. 12, 2019) ("Most concerning, ICE's removal of Defendant from this country is interfering with Defendant's Sixth

10

Amendment right to 'consult with counsel, to review the evidence against him[,] and to prepare a defense to the charge.'") (quoting United States v. Resendiz-Guevara, 145 F. Supp. 3d 1128, 1138 (M.D. Fla. 2015)). Moreover, to the extent that the government seeks to proceed with this prosecution in Defendant's absence, his absence "necessarily prevents a fair trial" in violation of the Fifth Amendment. Valenzuela-Bernal, 458 U.S. at 872.

In its Opposition [#151], the government argues that "unless and until Castillo unlawfully returns to the United States and is arrested, there won't be any trial, so his trial rights will not be impaired." Id. at 16. The government has not explained, however, how a delayed trial would not itself violate his Sixth Amendment rights, as well as the Speedy Trial Act. See 18 U.S.C. § 3161(c)(1) (trial to be set within seventy days from the date the defendant first appeared before a judicial officer); id. at § 3173 ('[n]o provision of this chapter shall be interpreted as a bar to any claim of denial of speedy trial as required by amendment VI of the Constitution").

In sum, the court finds that the Defendant's removal has interfered with his rights under the Fifth and Sixth Amendment.

D. Abandonment

Defendant argues the government abandoned the drug prosecution when it elected to remove him from the United States. Mot. 6 [#146]. Defendant contends that the government has two choices when an individual who is in the United States illegally faces criminal prosecution; the government can "'proceed administratively with deportation, or defer removal for the [individual] to face criminal prosecution.'" Id. (citing Resendiz-Guevara, 145 F. Supp. 3d at 1136). Here the government removed Castillo, and in doing so, abandoned the drug prosecution. Id. at 9.

The government responds that it did not change course and abandon its unlawful reentry prosecution where Castillo was successfully prosecuted for the unlawful reentry offense and then removed. Opp'n 5-6 [#151]. The government contends that the cases cited by Defendant are

11

therefore distinguishable because they involved the decision to remove the defendant while an unlawful reentry prosecution was underway. Id. at 6 (citing as an example, Resendiz-Guevara, 145 F. Supp. 3d at 1137 (unlawful reentry prosecution where ICE referred the defendant for prosecution and then removed him prior to the resolution of the criminal prosecution)).

The government's argument is misplaced. Defendant does not argue the government changed course in an unlawful reentry prosecution. He argues the government changed course in the drug prosecution when it first indicted him on drug charges and, after his arrest on those charges, removed him, thereby preventing adjudication of those charges. Mot. 9 [#146].

In United States v. Munoz-Garcia, the court found the government abandoned its drug prosecution when the defendant was removed. 455 F. Supp. 3d 915, 925 (D. Ariz. 2020) ("The government chose to proceed with the defendant's removal proceeding and deport her from the United States. The result of that choice is that the government abandoned the criminal prosecution."). The court finds the reasoning of Munoz-Garcia persuasive here where, like Defendant, Munoz-Garcia was indicted on a non-illegal reentry charge, released pending trial, and then processed for removal and removed from the United States. Id. at 918.[4] Moreover, the government has not offered to return Defendant to the District of Massachusetts for purposes of the drug prosecution.[5] See Resendiz-Guevara, 145 F. Supp. 3d 1137 (explaining that the government

---

[4] The government seeks to distinguish this case and others on the ground that ICE detention was not used here as an end-run around the decision to release the defendant under the Bail Reform Act. Opp'n 6 [#151] (citing Trujillo-Alvarez, 900 F. Supp. 2d 1167; United States v. Boutin, 269 F. Supp. 3d 24, 25 (E.D.N.Y. 2017)). Although the court does not agree that an end-run around a decision to release the defendant is needed to find abandonment, the government's argument that there was no end-run around the Magistrate Judge's decision also fails once ICE removed the Defendant from this court's jurisdiction, as discussed above.

[5] The court notes cases from the District of Arizona that have held that a defendant's removal from Arizona to Mexico does not necessarily jeopardize the district court's ability to try the defendant where it is feasible to parole a defendant from Mexico into Arizona for purposes of trial. See United States v. Perez-Canez, No. CR-18-00229-PHX-JJT, 2020 WL 1000029 (D. Ariz. Mar. 2, 2020). In these instances, the government also represented that it would assist in paroling the defendants into

did not provide the court with "what steps, if any, it took to obtain [defendant's] presence at trial"). While the government may argue that there was no intentional abandonment of the drug prosecution, the court finds that by removing Defendant the government has in fact abandoned the drug prosecution.

As noted earlier, the immigration regulations concerning a non-citizen's voluntary departure deem such a departure while a criminal prosecution is pending in federal or state court to be contrary to the interest of the United States, unless the prosecuting authority has consented to the departure. 8 C.F.R. § 215.3(g). If a voluntary departure is deemed prejudicial to the United States when an individual who is a party to a criminal case leaves without the permission of the prosecuting authority, the court sees no reason why it is not equally prejudicial to the United States if the individual is removed during a criminal proceeding without the prosecuting authority's consent. Here, the government has reported no objection to ICE's removal of the Defendant, and accordingly, the court treats the removal as one with at least the prosecuting authority's tacit consent, providing yet another ground to hold that the government abandoned the prosecution when it removed the Defendant.

E. Appropriate Remedy

The court turns finally to the appropriate remedy here.

> Guided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress. The purposes underlying use of the supervisory powers are threefold: to implement remedy for violation of recognized rights; to preserve judicial integrity by ensuring that conviction rests on appropriate considerations validly before the jury; and finally, as a remedy designed to deter illegal conduct.

United States v. Hasting, 461 U.S. 499, 505 (1983) (internal citation, quotation, and alteration

---

the country.

omitted). Invoking this third theme, the First Circuit has warned that courts "will consider unleashing the supervisory power in criminal cases '[w]hen confronted with extreme misconduct and prejudice,' in order 'to secure enforcement of better prosecutorial practice and reprimand of those who fail to observe it.'" United States v. Horn, 29 F.3d 754, 760 (1st Cir. 1994) (quoting United States v. Osorio, 929 F.2d 753, 763 (1st Cir. 1991) (internal quotations omitted)). However, while a court may exercise its supervisory powers to dismiss an indictment, it "must use these powers 'sparingly.'" United States v. Stokes, 124 F.3d 39, 46 (1st Cir. 1997) (quoting United States v. Santana, 6 F.3d 1, 10 (1st Cir. 1993)). "Because the public maintains an abiding interest in the administration of criminal justice, dismissing an indictment is an extraordinary step." Id. at 44. Limits on the court's supervisory power dictate that it applies "only when there is no effective alternative provided by rule, statute, or constitutional clause" and that the power "must be exercised with restraint and circumspection." Horn, 29 F.3d at 760.

The court finds that ICE's removal of the Defendant to the Dominican Republic was in disregard of the Magistrate Judge's order that Defendant not leave the District of Massachusetts, and ignored this court's jurisdiction over the Defendant and this criminal prosecution. The court finds further that ICE's actions violated Defendant's constitutional rights and that those rights cannot be remedied, where Defendant has been removed from the country (and barred from reentry) and is no longer able to prepare a defense or secure a speedy trial. The government contends that "the prosecution has not committed misconduct." Opp'n 17 [#151]. The court agrees that the prosecutor did not commit misconduct; but finds ICE's removal of the Defendant in blatant disregard of this court's authority and of Defendant's constitutional rights to require reprimand and deterrence.

The government argues further that Defendant has not been prejudiced. Id. This argument assumes that, if he had not been removed, Defendant would necessarily be convicted of the drug

14

offense, and therefore, "deportation has likely saved him from serving additional years in prison." Id. at 3-4.[6] The court finds this argument untenable. First, as Defendant noted in his Reply [#156], Defendant has not been convicted, and arguing he is not prejudiced because he is not facing additional prison time runs contrary to the presumption of innocence. Moreover, Defendant is prejudiced by having a criminal charge open against him even if he is out of the United States. See Reply 8 [#156] (citing cf. Barker v. Wingo, 407 U.S. 514, 532 (1972) ("Prejudice, of course, should be assessed in the light of the interests of the defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.")).

For all of these reasons, the court finds that there is no effective alternative to dismissal of the indictment.

The government argues that any dismissal should be without prejudice. This question poses a very close call. The court agrees that Defendant will not be prejudiced if the indictment is dismissed without prejudice. In that event, he is no worse off than if he had he not been indicted in this case at all, or if the indictment issued after he was removed. While it may be true that Defendant would have an easier time defending against a case before the events at issue are too far in the past, the government will face the same challenges should it seek to prosecute this case later. Moreover, Defendant is now aware that a grand jury has concluded that the government has probable cause to indict him and can take that information into account in determining whether to try to return to the United States.

Also weighing in favor of a dismissal without prejudice is the public's interest in the

---

[6] The government also argues that Defendant is not prejudiced by his removal where the "prosecution will lie dormant" and he is out of custody and in the Dominican Republic. Opp'n 11 [#151].

15

investigation and prosecution of criminal activities. Cf. United States v. Nocella, 849 F.2d 33, 36 (1st Cir. 1988) (explaining that excluding evidence pertaining to charges "as to which the Sixth Amendment right to counsel had not attached . . . simply because other charges were pending . . ., would unnecessarily frustrate the public's interest in the investigation of criminal activities") (citing Maine v. Moulton, 474 U.S. 159, 180 (1985)).

Weighing in favor of dismissal with prejudice is the need "to secure enforcement of better prosecutorial practice and reprimand of those who fail to observe it." Horn, 29 F.3d at 760 (internal citation and quotation omitted). Once procedures required for removal of a noncitizen are completed, ICE should return criminal defendants to the district where they are charged to allow the prosecutions to go forward or should ask prosecuting authorities to seek a dismissal without prejudice of pending charges.

The court's supervisory power must be exercised "with restraint and circumspection." Id. Here, this restraint dictates that the dismissal is without prejudice. However, if ICE continues a practice of removing defendants without regard to ongoing criminal proceedings, such restraint is likely to not be warranted.

IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss [#146] is ALLOWED and Count One of the Indictment [#1] is DISMISSED WITHOUT PREJUDICE as to Defendant Jesus Castillo. IT IS SO ORDERED.

Date: May 6, 2021                                              /s/ Indira Talwani
                                                           United States District Judge